UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOWARD COHAN, | ) INJUNCTIVE RELIEF REQUESTED |
| Plaintiff, | ) |
| V | ) CASE NO.: |
| STK CHICAGO, LLC d/b/a STK CHICAGO, | ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff, HOWARD COHAN ("Plaintiff"), by and through his undersigned counsel, hereby files this Complaint against STK CHICAGO, LLC, d/b/a STK CHICAGO ("Defendant") for declaratory and injunctive relief, attorneys' fees, expenses and costs (including, but not limited to, court costs and expert fees) pursuant to 42 U.S.C. §12182 et. seq., and the 2010 Americans with Disabilities Act ("ADA") and alleges as follows:

**JURISDICTION AND VENUE**

1. This Court is vested with original jurisdiction over this action pursuant to 28 U.S.C. §1331 because Plaintiff's claims arising under Title 42 U.S.C. §12182 *et. seq.*, based on Defendant's violations of Title III of the ADA. *See also* 28 U.S.C. §§2201 and 2202, as well as the 2010 ADA Standards.

2. Venue is proper in this Court, pursuant to 28 U.S.C. §1391(B) in that all events giving rise to the lawsuit occurred in the Northern District of Illinois Eastern District.

1

**PARTIES**

3. Plaintiff, HOWARD COHAN is a resident of the state of Florida residing in Palm Beach County, Florida.

4. The Defendant is located at 9 W. Kinzie St., Chicago, IL 60654. (Thereinafter "The Premises")

5. The Premises is a restaurant doing business as STK Chicago, thereby making it a place of public accommodation.

6. Defendant is authorized to conduct and is, in fact, conducting, business within the state of Illinois.

**PLAINTIFF'S DISABILITIES**

7. Plaintiff is an individual with numerous permanent disabilities including severe spinal stenosis of the lumbar spine with spondylolisthesis; severe spinal stenosis of the cervical spine with nerve root compromise on the right side; a non-union fracture of the left acromion (shoulder); a labral tear of the left shoulder; a full thickness tear of the right rotator cuff; a right knee medial meniscal tear; a repaired ACL and bilateral meniscal tear of the left knee; and severe basal joint arthritis of the left thumb. The above listed permanent disabilities and symptoms cause sudden onsets of severe pain and substantially limit Plaintiff's major life activities, including moving, sitting and standing.

8. At the time of Plaintiff's visit to the Premises on October 11, 2024 (and prior to instituting this action), Plaintiff suffered from a "qualified disability" under the ADA and required the use of a handicap parking space and the use of other means of accessibility for persons with disabilities. Plaintiff personally visited the Premises, but was denied full and equal access and full

2

and equal enjoyment of the facilities, services, goods and amenities within the Premises, even though he would be classified as a "bona fide patron".

9. Except for the period of the pandemic in 2020 and 2021, Plaintiff frequently travels to Illinois and had averaged at least two (2) trips per year for the past ten (10) years. Recently, these trips include the City Chicago where Plaintiff enjoys visiting the restaurants and shops. He intends to return to Chicago in the summer or fall of 2025, subject to his physical ability to do so.

10. When Plaintiff arrives in Chicago, he looks for restaurants where he can eat or have a beverage that will accommodate his disabilities. This includes visiting multiple restaurants, including the Defendant's restaurant.

11. While Plaintiff does not pre-determine what violations, if any, exist, it is not uncommon for many of the restaurants that he visits to have the same, or similar, ADA violations, because what they all have in common is bar and dining area and restrooms.

12. Plaintiff is familiar with other restaurants in Chicago, having visited many. Through these visits, Plaintiff found that many of the area's restaurants have failed to comply with the ADA and, as a result, have discriminated against Plaintiff and other persons with disabilities by maintaining architectural and other barriers that deny the disabled full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within the restaurant. Accordingly, before Plaintiff selects a restaurant to eat in, he tries to personally visit it to ensure it is ADA compliant, even when it advertises itself as such.

13. Completely independent of his personal desire to have access to places of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering and engaging discrimination against the disabled in public accommodations. When acting as a "tester", Plaintiff employs a routine practice. Plaintiff

personally visits the public accommodation; engages all of the barriers to access, or at least of those that Plaintiff is able to access; tests all of those barriers of access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to the public accommodation to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do.

## DEFENDANT'S VIOLATIONS OF THE ADA

14. On October 11, 2024, Plaintiff visited the Defendant's Premises to determine whether it would be an adequate restaurant for a person with disabilities to eat or drink at, including himself, while visiting Chicago.

15. Based on a preliminary inspection of the Premises, Defendant is in violation of 42 U.S.C. § 12182 et. seq. and the 2010 American Disabilities Act Standards et. seq., and is discriminating against Plaintiff as a result of, inter alia, the following specific barriers and violations that Plaintiff personally physically encountered and observed.

I. **Main Bar and Bar Area**:

   a. **Barrier Encountered by Plaintiff:** Inaccessible Bar because lower portion of Bar is used by servers.

   **Violation:** Providing counter heights exceeding 36 inches making it impossible to service a person with a disability in violation of 2010 ADAAG §§904, 904.4, 904.4.1 and 904.4.2 and/or §§4.32.4, 5.2, 5.3 and 5.4 of the 1991 ADA Standards.

   **Impact:** With severe spinal and shoulder injuries, Plaintiff cannot comfortably access or use counters that exceed 36 inches. Reaching over such counters

aggravates his shoulder injuries and creates strain on his back, leading to significant discomfort.

**Readily Achievable Alteration/Modification:** Require servers to leave accessible portion of bar open or install ADA compliant tables adjacent to the Bar.

b.  **Barrier Encountered by Plaintiff:** Inaccessibly tables.

**Violation:** Failing to provide the correct height for accessible seating or work surface use for person(s) with a disability at a bar or adjacent table in the bar area, for food or beverage service in violation of 2010 ADAAG §§902, 902.1, 902.2, 902.3, 305, 306 and/or §4.32.4 of the 1991 ADA Standards.

**Impact on Plaintiff:** The lack of accessible bar counter and adjacent seating makes it difficult for Plaintiff to participate in social or dining activities at the bar and bar area. Given his spinal stenosis, knee injuries, and shoulder issues, standing or using improperly configured seating leads to significant pain and discomfort.

**Readily Achievable Alteration/Modification**: Provide accessible bar counter or adjacent ADA compliant tables.

c.  **Barrier Encountered by Plaintiff**: Inaccessible tables because of lack of clear floor space.

**Violation** Failing to provide seating for a person with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§902, 902.2, 305 and 306 and/or §§4.2.4, 4.2.5, 4.32.2 and 4.5 of the 1991 ADA Standards

**Impact:** Improper floor space limits Plaintiff's ability to navigate comfortably. His mobility is already restricted due to his knee injuries and spinal issues, so insufficient space increases the risk of strain and pain while maneuvering.

5

>> **Readily Achievable Alteration/Modification:** Provide accessible tables with correct leg parameters dispersed throughout all seating areas.
>
> d. **Barrier Encountered by Plaintiff:** Insufficient accessible seating.
>
> **Violation:** Failing to provide seating for a person with a disability that has the Failing to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§226, 226.1, 902, 305 and 306.
>
> **Impact on Plaintiff:** The lack of accessible bar counter and adjacent seating makes it difficult for Plaintiff to participate in social or dining activities at the bar and bar area. Given his spinal stenosis, knee injuries, and shoulder issues, standing or using improperly configured seating leads to significant pain and discomfort
>
> **Readily Achievable Alteration/Modification:** Assure that at least 5% of the dining surfaces are ADA compliant.

II. **Secondary Bar and Seating Area**

> a. **Barrier Encountered by Plaintiff:** Inaccessible counter
>
> **Violation:** Providing counter heights exceeding 36 inches making it impossible to service a person with a disability in violation of 2010 ADAAG §§904, 904.4, 904.4.1 and 904.4.2 and/or §§4.32.4, 5.2, 5.3 and 5.4 of the 1991 ADA Standards.
>
> **Impact on Plaintiff:** The lack of accessible bar counter and adjacent seating makes it difficult for Plaintiff to participate in social or dining activities at the bar and bar area. Given his spinal stenosis, knee injuries, and shoulder issues, standing or using improperly configured seating leads to significant pain and discomfort.

      **Readily Achievable Alteration/Modification**: Provide accessible bar counter and accessible tables.

b.    **Barrier Encountered by Plaintiff:** Insufficient clear floor space

    **Violation:** Failing to provide seating for a person with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§902, 902.2, 305 and 306 and/or §§4.2.4, 4.2.5, 4.32.2 and 4.5 of the 1991 ADA Standards.

    **Impact:** Improper floor space limits Plaintiff's ability to navigate comfortably. His mobility is already restricted due to his knee injuries and spinal issues, so insufficient space increases the risk of strain and pain while maneuvering.

    **Readily Achievable Alteration/Modification:** Provide accessible tables with correct leg parameters dispersed throughout all seating areas.

c.    **Barrier Encountered by Plaintiff:** Insufficient seating for persons with disabilities.

    **Violation:** Failing to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§226, 226.1, 902, 305 and 306.

    **Impact on Plaintiff:** The lack of accessible bar counter and adjacent seating makes it difficult for Plaintiff to participate in social or dining activities at the bar and bar area. Given his spinal stenosis, knee injuries, and shoulder issues, standing or using improperly configured seating leads to significant pain and discomfort

    **Readily Achievable Alteration/Modification:** Assure that at least 5% of the dining surfaces are ADA compliant.

7

    d.    **Barrier Encountered by Plaintiff:** Insufficient dispersion of seating for disabled persons.

    **Violation:** Failing to provide a sufficient dispersion of seating throughout the facility when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§226, 226.2, 902, 305 and 306.

    **Impact on Plaintiff:** The lack of accessible bar counter and adjacent seating makes it difficult for Plaintiff to participate in social or dining activities at the bar and bar area. Given his spinal stenosis, knee injuries, and shoulder issues, standing or using improperly configured seating leads to significant pain and discomfort

    **Readily Achievable Alteration/Modification:** Assure that at least 5% of the dining surfaces are ADA compliant.

### III. Restaurant Dining Area

    a.    **Barrier Encountered by Plaintiff**: Inaccessible seating due to lack of clear floor space

    **Violation:** Failing to provide seating for a person with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§902, 902.2, 305 and 306 and/or §§4.2.4, 4.2.5, 4.32.2 and 4.5 of the 1991 ADA Standards**.**

    **Impact:** Improper floor space limits Plaintiff's ability to navigate comfortably. His mobility is already restricted due to his knee injuries and spinal issues, so insufficient space increases the risk of strain and pain while maneuvering.

**Readily Achievable Alteration/Modification:** Provide accessible tables with correct clear ground space and depths.

b. **Barrier Encountered by Plaintiff:** Insufficient seating for persons with disabilities

**Violation:** Failing to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§226, 226.1, 902, 305 and 306.

**Impact on Plaintiff:** The lack of accessible bar counter and adjacent seating makes it difficult for Plaintiff to participate in social or dining activities at the bar and bar area. Given his spinal stenosis, knee injuries, and shoulder issues, standing or using improperly configured seating leads to significant pain and discomfort

**Readily Achievable Alteration/Modification:** Assure that at least 5% of the dining surfaces are ADA compliant

c. **Barrier Encountered by Plaintiff:** Insufficient seating for persons with disabilities.

**Violation:** Failing to provide a sufficient dispersion of seating throughout the facility when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§226, 226.2, 902, 305 and 306.

**Impact:** The limited number of accessible seating options forces Plaintiff to wait or sit in non-compliant seating, further aggravating his physical limitations, especially in situations requiring long periods of sitting or standing.

9

**Readily Achievable Alteration/Modification:** Assure that at least 5% of the dining surfaces are ADA compliant.

IV. **General Area of the Men's Restroom:**

    a.     **Barrier Encountered by Plaintiff:** Improperly designated ADA restroom

**Violation:** Failing to provide proper signage for an accessible restroom or failure to redirect a person with a disability to the closest available accessible restroom facility in violation of 2010 ADAAG §§216, 216.2, 216.6, 216.8, 703, 703.1, 703.2, 703.5 and 703.7.2.1 and/or §§4.30 and 4.30.1 of the 1991 ADA Standards.

**Impact:** Without proper ADA signage, Plaintiff cannot easily determine if the restroom is ADA compliance without physically entering it nor is he directed to the closest accessible restroom.

**Readily Achievable Alteration/Modification:** Install proper ADA compliant signage.

    b.     **Barrier Encountered by Plaintiff**

**Violation:** Inaccessible mirrors

**Impact on Plaintiff:** While not directly affecting Plaintiff, the improper placement of mirrors prevents access by persons confined to wheelchairs.

**Readily Achievable Alteration/Modification:** Lower mirrors to an ADA mandated height or install an additional full-length mirror on another available wall in the restroom

    c.     **Barrier Encountered by Plaintiff:** Hazardous pipes under sink

**Violation:** Failing to provide the proper insulation or protection for the plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§606 and 606.5 and/or §4.24.6 of the 1991 ADA Standards.

**Impact on Plaintiff:** Unprotected plumbing poses a risk to Plaintiff, who may accidentally injure himself due to limited sensation in his hands or compromised hand function from his basal joint arthritis which causes Plaintiff to frequently drop objects on the floor and under sinks.

**Readily Achievable Alteration/Modification:** Fully cover all plumbing and objects under sink.

d. **Barrier Encountered by Plaintiff:** Insufficient maneuvering clearance at the door to ingress and egress

**Violation:** Providing a swinging door or gate with improper maneuvering clearance(s) due to a wall or some other obstruction (dispenser) that does not comply with the standards set forth in 2010 ADAAG §§404, 404.1, 404.2, 404.2.3, 404.2.4 and 404.2.4.1 and/or §§4.13, 4.13.3 and 4.13.6 of the 1991 ADA Standards.

**Impact:** Plaintiff's spinal and knee issues make it difficult to maneuver, requiring Plaintiff to use the wall as balance to enter and exit smaller areas.

**Readily Achievable Alteration/Modification:** Relocate dispenser.

e. **Barrier Encountered by Plaintiff:** Insufficient maneuvering clearance at the door to ingress and egress

**Violation:** Providing a swinging door or gate with improper maneuvering clearance(s) due to a wall or some other obstruction (trash can) that does not comply

with the standards set forth in 2010 ADAAG §§404, 404.1, 404.2, 404.2.3, 404.2.4 and 404.2.4.1 and/or §§4.13, 4.13.3 and 4.13.6 of the 1991 ADA Standards

**Impact:** Plaintiff's spinal and knee issues make it difficult to maneuver, requiring Plaintiff to use the wall as balance to enter and exit smaller areas.

**Readily Achievable Alteration/Modification:** Relocate trash can

f.  **Barrier Encountered by Plaintiff:** Inaccessible restroom due to door pressure

**Violation:** Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§404, 404.1, 404.2, 404.2.9 and 309.4 and/or §4.13.11 of the 1991 ADA Standards.

**Impact**: Plaintiff's shoulder and spinal injuries make it difficult and painful for him to open doors where the opening pressure exceeds 5 lbs.

**Readily Achievable Alteration/Modification:** Adjust door pressure so that the continuous opening pressure does not exceed 5 lbs.

g.  **Barrier Encountered by Plaintiff:** Inaccessible urinal

**Violation:** Failing to provide the correct opening width for a forward approach into a urinal, stall door or lavatory in violation of 2010 ADAAG §§305, 305.7.1, 404, 605.3 and 606.2 and/or §§4.18.3 and 4.2.5 of the 1991 ADA Standards.

**Impact:** Improper opening to urinal limits Plaintiff's ability to navigate comfortably. His mobility is already restricted due to his knee injuries and spinal issues, so insufficient space increases the risk of strain and pain while maneuvering

**Readily Achievable Alteration/Modification:** Increase opening width of approach to urinal.

V. **Men's Accessible Stall**

    a. **Barrier Encountered by Plaintiff:** Missing stall door handle.

    **Violation:** Failing to provide a stall door handle on one or both sides of a stall door as required for a person with a disability in violation of 2010 ADAAG §§309, 309.1, 309.2, 309.3, 309.4 and 308.

    **Impact on Plaintiff:** The improper stall door mechanism requires tight grasping, pinching and twisting to close door without a proper door handle, resulting in pain due to compromised hand function from his basal joint arthritis.

    **Readily Achievable Alteration/Modification:** Install a proper door handle on both sides of the stall door

    b. **Barrier Encountered by Plaintiff:** Inaccessible water closet.

    **Violation:** Failing to provide the water closet in the proper position relative to the side wall or partition in violation of 2010 ADAAG §§604 and 604.2 and/or §§4.16, 4.17.2 and 4.17.3 of the 1991 ADA Standards

    **Impact on Plaintiff:** Plaintiff's shoulder and spinal injuries make it difficult for him to maneuver on the grab bars or reach the toilet paper dispenser when the water is in an improper position, resulting in increased strain and pain.

    **Readily Achievable Alteration/Modification:** Place water closet in correct position mandated by the ADA.

    c. **Barrier Encountered by Plaintiff:** Obstructions around water closet.

    **Violation:** Failing to provide sufficient clear floor space around a water closet without any obstructing elements in this space in violation of 2010 ADAAG §§603,

603.2, 603.2.3, 604, 604.3 and 604.3.1 and/or §§4.16, 4.16.2, 4.22 and 4.22.3 of the 1991 ADA Standards.

**Impact on Plaintiff:** Plaintiff's shoulder and spinal injuries make it difficult for him to maneuver when the clear floor space is used to store toilet paper rolls, resulting in increased strain and pain.

**Readily Achievable Alteration/Modification:** Relocate the storage of the toilet paper rolls from the clearance space around the water closet.

d. **Barrier Encountered by Plaintiff:** Improper length and placement of grab bars

**Violation:** Providing grab bars of improper horizontal length or spacing on the back or side wall in violation of 2010 ADAAG §§604, 604.5, 604.5.1, 604.5.2, 609 and 609.4 and/or §§4.26 and 4.26.2 of the 1991 ADA Standards.

**Impact on Plaintiff:** Plaintiff relies on grab bars for stability due to his spinal and knee conditions. Improper placement and length create a safety hazard and makes transfers painful and risky.

**Readily Achievable Alteration/Modification:** Install grab bars of proper length and position relative to the side wall and centerline of the water closet.

e. **Barrier Encountered by Plaintiff:** Improper height of grab bars

**Violation:** Failing to provide grab bars at 33 inches minimum and 36 inches maximum above the finished floor measured to the top of the gripping surface in violation of 2010 ADAAG §§604, 604.5, 609 and 609.4 and/or §§4.17.6, 4.26 and 4.26.2 of the 1991 ADA Standards.

>**Impact on Plaintiff:** Plaintiff relies on grab bars for stability due to his spinal and knee conditions. Improper height creates a safety hazard and makes transfers painful and risky.
>
>**Readily Achievable Alteration/Modification:** Install grab bars of proper height from the finished floor.

16. The foregoing violations injured the Plaintiff directly and personally because they created barriers that denied him, as well as other disabled persons, full and equal access and full and equal enjoyment of the facilities, services, goods and amenities within the Premises that were afforded to able-bodied members of the community using the Premises.

17. As a result of the foregoing violations of the ADA, the Plaintiff determined that the Defendant did not welcome him and other disabled persons at the Premises because it continued to maintain discriminatory barriers long after the ADA became law in 1991 and many years after the 2010 amendments became effective. As a result, the Plaintiff also suffered personal humiliation as a result of the Defendant's continuing discrimination against the disabled.

18. Plaintiff would like to be able to be a patron of the Premises in the near future and be able to enjoy the goods and services that are available to the able-bodied public, but is currently precluded from doing so as a result of Defendant's discriminatory conduct as described herein. Plaintiff will continue to be precluded from using the Premises until corrective measures are taken at the Premises to eliminate the discrimination against persons with physical disabilities.

19. Plaintiff, in his individual capacity, will return to the Premises and avail himself to the services offered at the Premises when Defendant modifies the Premises and modifies the policies and practices to accommodate individuals who have physical disabilities.

20. Plaintiff is continuously aware of the violations at Defendant's Premises and is aware that it would be a futile gesture to return to the Premises as long as those violations exist. Plaintiff, however, is unwilling to suffer additional discrimination and humiliation by returning to a public place that is inaccessible to him and others with disabilities

21. Additionally, Plaintiff, in his capacity as a tester, intends to return to the Chicago area during the summer or fall of 2025, subject to plaintiff's physical condition, to determine if any of the previously discovered ADA violations at Defendant's Premises and other places of public accommodation have been rectified. If places have made agreements with Plaintiff to rectify any specific ADA violation, Plaintiff will also return within a reasonable time after the period for making the remediations have expired to confirm compliance.

22. Plaintiff has suffered, and will continue to suffer, direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA. It is Plaintiff's belief that said violations will not be corrected without Court intervention, and thus Plaintiff will suffer legal harm and injury in the near future.

23. To the best of Plaintiff's belief and knowledge, at the time of filing this lawsuit Defendant has failed to eliminate the specific violations set forth in paragraph 15 above.

24. Although Defendant is charged with having knowledge of the violations, Defendant may not have had actual knowledge of said violations until this Complaint made Defendant aware of same.

25. To date, the readily achievable barriers and violations of the ADA still exist at the Premises and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

26. As the owner, lessor, lessee or operator of the Premises, Defendant is required to comply with the ADA. To the extent the Premises, or portions thereof, existed and were occupied prior to January 26, 1992, the owner, lessor, lessee or operator has been under a continuing obligation to remove architectural barriers at the Premises where removal was readily achievable, as required by 28 C.F.R. §36.402.

27. To the extent the Premises, or portions thereof, were constructed for occupancy after January 26, 1993, the owner, lessor, lessee or operator of the Premises was under an obligation to design and construct such Premises such that it is readily accessible to and usable by individuals with disabilities, as required by 28 C.F.R. §36.401.

28. To the extent the Premises, or portions thereof, were constructed for occupancy after January 26, 1993, the owner, lessor, lessee or operator of the Premises was under an obligation to design and construct such Premises such that it is readily accessible to and usable by individuals with disabilities, as required by 28 C.F.R. §36.401.

29. Pursuant to the ADA, 42 U.S.C. §12101 et. seq., and 28 CFR §36.304, Defendant was required to make the Premises, a place of public accommodation, accessible to persons with disabilities by January 28, 1992. As of the date of the filing of this Complaint, Defendant has failed to comply with this mandate.

30. Plaintiff has retained undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorneys' fees, costs and expenses paid by Defendant, pursuant to 42 U.S.C. §12205.

31. The violations alleged in paragraph 15 above are readily achievable to modify in order to bring the Premises into compliance with the ADA and when in compliance, the Plaintiff

will return to enjoy the facilities to the same extend non-disabled patrons currently enjoy the facilities.

32. In the instances where the 2010 ADAAG Standards do not apply to the violations listed in paragraph 15 above, the 1991 ADA Standards apply.

33. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including entering an Order to alter the Premises to make them readily accessible to and useable by individuals with disabilities to the extent required by the ADA and closing the Premises until the requisite modifications are completed.

WHEREFORE, Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

    a. This Court declare that the Premises owned, operated and/or controlled by Defendant is in violation of the ADA;

    b. This Court enter an Order requiring Defendant to alter the Premises and/or its facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

    c. This Court enter an Order directing Defendant to evaluate and neutralize its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Premises;

    d. This Court award reasonable attorneys' fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to Plaintiff; and

    e. This Court award such other and further relief as it may deem necessary, just and proper.

                                              Respectfully submitted,

                                              HOWARD COHAN

                                              By: _/s/ *Marshall J. Burt*_
                                                        One of his attorneys

Marshall J. Burt, Esq.
The Burt Law Group, Ltd.
1338 S. Federal St. #L
Chicago, IL 60605
312-854-3833
marshall@mjburtlaw.com
IARDC #6198381